# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

LEONARD H. BURST,                           )
                                            )
              Plaintiff,                     )
                                            )
       v.                                   )          Case No. 1:25-CV-00162 RWS
                                            )
STE. GENEVIEVE COUNTY                       )
SHERIFF'S OFFICE, et al.,                   )
                                            )
              Defendants.                    )

## MEMORANDUM AND ORDER

Self-represented Plaintiff Leonard Burst brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs. [ECF No. 2.] Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and waive the filing fee.[1]

Further, after reviewing Plaintiff's Complaint, the Court finds as follows. The Court will dismiss Plaintiff's claims that he was (1) subjected to false arrest, (2) false imprisonment, (3) violations of his due process and equal protection rights (with regard to his arrest) and (4) an encroachment on his right to bear arms and cruel and unusual punishment, pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court will also dismiss several of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B), including his claims that his home was unlawfully searched, his blood and urine were unlawfully seized and he was subjected to excessive force during the course of his arrest. Further, the Court will abstain from presiding over Plaintiff's replevin claims

---

[1] Because Plaintiff was released from confinement shortly after filing the instant action, the Court will grant his request to proceed in forma pauperis and will not assess an initial partial filing fee at this time. *See, e.g., Howard v. Crawford,* No. 4:09CV15 HEA, 2009 WL 482473, at *1 (E.D. Mo. Feb. 25, 2009).

as he currently has an ongoing state case that is duplicative of the claims in this lawsuit. Last, having dismissed all federal claims, any state law claims brought by Plaintiff in this case will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint

Plaintiff Leonard Burst filed this action on September 29, 2025. [ECF No. 1]. At the time he filed the instant action, he was incarcerated at Tipton Correctional Center in Tipton, Missouri, pursuant to a four-year sentence for unlawful use of a weapon and assault in the fourth degree. *See State v. Burst,* No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court). It appears Plaintiff was released from confinement in mid to late December of 2025.

Plaintiff sues the Ste. Genevieve County Sheriff's Office, the Sheriff, four Sheriff's Deputies, the Missouri Department of Health and Senior Services, a Social Worker with the Department, Ste. Genevieve County Memorial Hospital and four hospital workers. Plaintiff brings this action against Defendants in their individual and official capacities.

Plaintiff's claims arise under 42 U.S.C. § 1983. He brings claims under the 2nd, 4th, 5th, 8th and 14th Amendments. He states that he was subjected to false arrest, false imprisonment, unlawful search and seizure, an encroachment on his right to bear arms, cruel and unusual punishment and violations of his due process and equal protection rights. Plaintiff also claims that he was subjected to violations of the Missouri Castle Doctrine[2] and unlawfully taken for medical testing without a warrant. Last, Plaintiff argues that he was subjected to excessive force during the course of his arrest. For relief in this action Plaintiff seeks monetary damages and return of firearms seized by the Ste. Genevieve County Sheriff's Department pursuant to a search warrant.

---

[2] "The castle doctrine as set out in section 563.031.2(2), incorporates the requirements of the general statutory right of self-defense in section 563.031.1 and requires a reasonable belief in the use of actual or imminent unlawful force by another to justify deadly force." *State v. Straughter*, 643 S.W.3d 317, 322 n.7 (Mo. banc 2022).

Because Plaintiff's claims are intertwined with his 2020 Missouri state criminal action, the Court will provide background from that case.

### Plaintiff's State Court Criminal Case

The following facts are taken from independent review of Plaintiff's criminal case (and the appeals and post-conviction proceedings of his criminal action) on both Westlaw.com and Missouri Case.net, the State of Missouri's online docketing system.

> As of October 2020, [Plaintiff] was living with his 90-year-old mother. On October 6, 2020, [Plaintiff's] mother left the residence, drove to a nearby school parking lot, and called the Missouri Department of Health and Senior Services. She asked for a place to stay for the night because she and [Plaintiff] had an argument.
>
> An elder abuse investigator from the Department of Health and Senior Services responded to [Plaintiff's] mother's location.[3] After discussing with [Plaintiff's] mother what happened between her and [Plaintiff], the investigator called for assistance pursuant to standard procedure. In response to the investigator's request, Sheriff's Deputy T.G. [Trevor Green] arrived in uniform to assist.
>
> After further discussion, [Plaintiff's] mother, the investigator, and Deputy T.G. went to the residence. When they arrived, [Plaintiff's] mother led Deputy T.G. and the investigator into the residence through the front door. There, they came across [Plaintiff] in the living room. Deputy T.G. immediately identified himself as a member of the Sheriff's Office, explained he was there to talk to [Plaintiff], and asked what had happened between [Plaintiff] and his mother earlier that day.
>
> Instead of responding to Deputy T.G.'s question, [Plaintiff] yelled at his mother. He shouted that she was getting scammed, was losing all their money, and was putting [Plaintiff] in harm's way. The investigator told [Plaintiff] there was no reason to yell. [Plaintiff] responded that it was his house and the investigator and Deputy T.G. were not going to tell him what to do.

---

[3] According to the Probable Cause Statement filed in Plaintiff's state criminal action, the elder abuse investigator who responded to Plaintiff's mother's phone call was Defendant Lori Meyers. *See State v. Burst*, No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court). The Probable Cause Statement indicates that the argument between Plaintiff and his mother, Dorothy Burst, was instigated after she got a phone call indicating she won a trip to Disney World, with the caveat that she only had to pay $400 to cover the taxes for the trip. Dorothy Burst paid the taxes, and when Plaintiff found out she had done so he became angry, got into her face and yelled at her. Plaintiff then told his mother he was going to get a lawyer to send her to a mental institution. *See id.* Dorothy Burst had previously contacted the Department of Health and Senior Services in May of 2019, stating that Plaintiff restrained her and gave her a black eye. Additionally, Plaintiff had gotten mad at his mother on several occasions and thrown her walker in the front yard in an attempt to break it. *Id.*

- 4 -

The situation escalated when [Plaintiff], continuing to raise his voice, exclaimed that since Deputy T.G. had a gun, he should be able to have a gun too. [Plaintiff] then walked to a closet door approximately eight to twelve feet away, where he grabbed a black semi-automatic handgun and put it behind his back. [Plaintiff] kept his hand on the handgun behind his back.

[Plaintiff] began walking towards the investigator and Deputy T.G. and told them to leave his house. According to the testimony of Deputy T.G. and the investigator, and by [Plaintiff's] own admission, [Plaintiff] said that if Deputy T.G. took another step towards him, he would "pop" him. [Plaintiff] testified he took out his gun and threatened to "pop" Deputy T.G. to "warn" him. [Plaintiff's] actions put Deputy T.G. in imminent fear for his life and for the safety of the investigator and [Plaintiff's] mother.

Deputy T.G. and the investigator left the house to de-escalate the situation. They left [Plaintiff's] mother inside the house because [Plaintiff] was between her and Deputy T.G., and Deputy T.G. wanted to avoid further escalation. Deputy T.G. and the investigator backed away to a safe distance, and Deputy T.G. contacted his supervisor, Sergeant J.D. [Jeff Dorenkamp].

Sergeant J.D. and other officers arrived on the scene. What followed was a standoff between [Plaintiff] and law enforcement officers lasting approximately five hours. During the standoff, [Plaintiff] engaged in a brief confrontation with Sergeant J.D., which was video recorded.[4]

*State v. Burst*, 712 S.W. 3d 429, 434 (Mo.Ct.App. 2025).

After Plaintiff's detainment on October 6, 2020, he was apparently transported to Ste. Genevieve County Memorial Hospital. It is unclear when Plaintiff was taken to the the Ste. Genevieve County Sheriff's Office and/or the Ste. Genevieve County Jail. However, it is clear that Plaintiff was first placed on a 96-hour mental health hold following the incident to review his

---

[4] At the jury trial, the State offered Exhibit 38, a one-minute and 20-second video depicting part of Plaintiff's confrontation with Defendant Jeff Dorenkamp, who was apparently standing in Plaintiff's front yard while attempting to get Plaintiff to voluntarily leave his home. Plaintiff was standing on his front porch shouting at Defendant Dorenkamp, demanding that Dorenkamp come into the home. Despite demanding Dorenkamp come into the home, Plaintiff yelled, "if you put a hand on me, I'll kill your whole family." This incident occurred a few hours after the incident between Plaintiff and Defendant Trevor Green. *State v. Burst*, 712 S.W. 3d at 438-439. The Missouri Court of Appeals found that Exhibit 38 presented a "complete, coherent picture of [Plaintiff's] conduct and state of mind while interacting with law enforcement, specifically Deputy T.G. and Sergeant J.D., over the course of just a few hours on October 6, 2020. . . The nature of the charged offenses renders [Plaintiff's] conduct and *mens rea* during that short time frame particularly relevant given the State's burden to prove that [Plaintiff] acted in an angry or threatening manner and placed Deputy T.G. in apprehension of immediate physical injury." *Id.*

mental health status. There was also a pending application for an arrest warrant for charges of unlawful use of a weapon, exhibiting a gun in an angry or threatening manner and assault in the fourth degree, for placing Deputy Trevor Green in apprehension of immediate physical injury. *See State v. Burst,* No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court).

Judge Joe Goff granted a search warrant for Plaintiff's residence at 16 Parkway Drive, Bloomsdale, Missouri, at which time Lieutenant White and Deputy Trevor Green conducted the search. *See id*. According to the probable cause statement, the following items were seized as evidence:

Black shoulder holster

The black shoulder holster was located on the door to the basement hanging behind clothes on a coat rack. This was the door that I believed to be a closet door at the time that Leonard reached behind and retrieved a hand gun [sic].

Mossberg 12G (Serial #UM143569)
Browning 20g (Serial #1Z52252)
Bartooth Magnum 20g (Serial #61-13-087733-03)
Marlin .22 (Serial #72337135)
Taurus GC29mm (Serial #ABA208379) (A Magazine filled w/6 rounds)
Cobra .380 (Serial #FS111955) (1 Magazine filled w/6 rounds)
H&R Model 649 .22 (Serial #AY08626)
Wesson Firearms .357 Magnum (Serial # S003669)
Savage .22 (Serial #1672234)
Springfield 12g (Serial #5100)
Marlin 30/30 (Serial #20162375)
Winchester 7mm (Serial #G2451068)
SKS (Loaded) (Serial #29001403)
Savage .223 (Serial #8H809659)
Browning 12g (Serial #116ZV15532)
Marlin .17HMR (Serial #93630198)
Three Buckets of Assorted Ammunition
Ammunition Can W/ Assorted Ammunition

*State v. Burst,* No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court).

A jury trial was held in front of Circuit Court Judge Jerel Lee Poor, II, on November 27th and 28th, 2023. Having previously pleaded guilty to felonious restraint in 2013 and unlawful use of a weapon in 2013, Plaintiff was charged as a persistent offender. After a jury trial, Plaintiff was

found guilty as charged. On February 6, 2024, Plaintiff received a 4-year sentence for the weapon count and a 6-month sentence for the assault count, which were ordered to run concurrently. *State v. Burst*, No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court).

Plaintiff's conviction was affirmed by the Missouri Court of Appeals on April 15, 2025. *State v. Burst*, 712 S.W. 3d 429, 434 (Mo.Ct.App. 2025). The mandate was issued on June 12, 2025. *Id*. Plaintiff filed his pro se motion for post-conviction relief on June 12, 2025. *Burst v. State*, No. 25SG-CC00037 (24th Jud. Cir., Ste. Genevieve County Court). The Court denied his motion on August 28, 2025. *Id*. Plaintiff filed a post-conviction appeal on September 2, 2025. *Burst v. State*, No. ED113827 (Mo.Ct.App. 2025). The matter is currently under review.

On September 26, 2025, Plaintiff[5] filed a Missouri state court action for replevin in Ste. Genevieve County. *See Burst v. Ste. Genevieve County Sheriff's Department*, et al., No. 25SG-CC00052 (24th Jud. Cir., Ste. Genevieve County Court). Plaintiff seeks return of "firearms wrongfully retained" by Sheriff Gary Stolzer and Ste. Genevieve County, Missouri. Defendants have moved to dismiss the action on several bases, the most salient basis being that Plaintiff has failed to properly allege facts showing that the criminal prosecution giving rise to the seizure of the items has concluded (including all post-trial appellate matters and challenges).[6]

---

[5] Plaintiff filed a First Amended Petition on December 12, 2025. His mother, Dorothy Burst, as well as his Aunt Douetta Davis, joined as plaintiffs in the First Amended Petition, arguing that they have an interest in the firearms taken from Plaintiff on October 6, 2020, the date of his arrest. Namely, Dorothy Burst, who is currently 96, argues that the firearms belong to her. Plaintiff's Aunt Douetta asserts that she has a vested interest in the firearms because they are family heirlooms.

[6] Pursuant to Missouri Revised Statute § 571.095, "Upon conviction for or attempting to commit a felony in violation of any law perpetrated in whole or in part by the use of a firearm, the court may, in addition to the penalty provided by law for such offense, order the confiscation and disposal or sale or trade to a licensed firearms dealer of firearms and ammunition used in the commission of the crime or found in the possession or under the immediate control of the defendant at the time of his or her arrest. The proceeds of any sale or gains from trade shall be the property of the police department or sheriff's department responsible for the defendant's arrest or the confiscation of the firearms and ammunition. If such firearms or ammunition are not the property of the convicted felon, they shall be returned to their rightful owner if he or she is known and was not a participant in the crime. Any proceeds collected under this section shall be deposited with the municipality or by the county treasurer into the county sheriff's revolving fund

## Discussion

### I.     Introduction

After careful review and liberal construction of the allegations of the Complaint, the Court finds that the following claims are barred by the doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994):  (1) that he was subjected to false arrest; (2) false imprisonment; (3) violations of his due process and equal protection rights[7] (with regard to his arrest); and (4) that he was subjected to an encroachment on his right to bear arms and cruel and unusual punishment.

Plaintiff's claim that his home was unlawfully searched is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B), as there is evidence in the state court record that the search was done pursuant to a valid judicial warrant. Plaintiff's claim that his blood and urine were unlawfully seized is also subject to dismissal under § 1915, as there is evidence in the state court record that after he was taken into custody, he was placed on a involuntary civil hold and his blood and urine were taken when he was taken to the hospital in conjunction with that hold.

The Court will abstain from reviewing Plaintiff's state law replevin claims under the *Colorado River* absention doctrine, and therefore dismiss such claims without prejudice, given his duplicative ongoing Missouri state case. Plaintiff's claim that he was subjected to excessive force during the course of his arrest on October 6, 2020, is also subject dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). And last, after dismissing all federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims in Plaintiff's complaint pursuant to 28 U.S.C. § 1367(c)(3).

---

established in section 50.535." Thus, defendants in the replevin action assert that it is premature for Plaintiff to request return of the firearms given that Plaintiff's conviction is still being challenged in an appeal of his post-conviction action.

[7] Plaintiff has not properly articulated an equal protection claim in his Complaint. Because he has articulated his claim broadly under false arrest and false imprisonment, the Court treats it as such. The same is true for Plaintiff's Eighth Amendment "cruel and unusual punishment" claim.

## II.        *Heck*-Barred Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

A prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

Regarding Plaintiff's claims that, on October 6, 2020, he was subjected to false arrest, false imprisonment, violations of his due process and equal protection rights (with regard to his arrest), an encroachment on his right to bear arms and cruel and unusual punishment, this Court is barred from reviewing his claims by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Here, Plaintiff's claims relate to the legitimacy of his criminal conviction in Ste. Genevieve County. He alleges that Defendants illegally arrested and imprisoned him, that he was unable to utilize the Missouri Castle Doctrine as a defense in his criminal action, and that their actions led

to his wrongful conviction.[8] A § 1983 suit for damages that challenges the lawfulness of Plaintiff's conviction is barred unless Plaintiff can prove that his conviction has been reversed, expunged or called into question by issuance of a writ of habeas corpus. *See id.* Plaintiff has failed to do so, and for this reason, Plaintiff's damages claims are *Heck*-barred.

Clearly, a finding by this Court that the allegedly unlawful acts of Defendants caused Plaintiff's unconstitutional imprisonment, would render Plaintiff's criminal conviction or sentence invalid. As discussed above, Plaintiff's conviction and sentence have not been invalidated previously by any Court to have considered them. His state-court appeal was denied, as was his post-conviction motion to vacate. However, his post-conviction appeal is still pending before the Missouri Court of Appeals. Thus, Plaintiff cannot make a showing that his conviction or sentence has been rendered invalid. Therefore, Plaintiff's claims, as denoted above, are *Heck*-barred. *See Anderson v. Franklin Cnty., Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999) (affirming district court's dismissal without prejudice of plaintiff's § 1983 damages claim that would question the validity of his conviction that had not been invalidated); *Schafer*, 46 F.3d at 45 (affirming district court's failure to state a claim dismissal of a § 1983 damages action where judgment in favor of plaintiff would necessarily imply the invalidity of his continued confinement).

## III.      Search and Seizure Claims

Plaintiff complains that after he was arrested in conjunction with the five-hour standoff with police on October 6, 2020, his home was unlawfully searched by Defendants, and he was

---

[8] The Circuit Court addressed Plaintiff's argument that his trial counsel failed to request and submit a Missouri Castle Doctrine defense when it ruled on Plaintiff's post-conviction motion to vacate. *See Burst v. State*, No. 25SG-CC00037 (24th Jud. Cir., Ste. Genevieve County Court). The Court found that there was substantial evidence in the case showing that Plaintiff was the initial aggressor and never withdrew from being the initial aggressor. Additionally, there was no evidence that Plaintiff was entitled to a Castle Doctrine version of self-defense because there was no credible evidence that Defendant Green and Defendant Meyers unlawfully entered Plaintiff's residence. This Court will not further address Plaintiff's contentions regarding the Missouri Castle Doctrine defense, namely because it is a legal defense rather than a civil cause of action.

taken to Ste. Genevieve County Memorial Hospital where his blood and urine were taken without his consent.

Plaintiff cannot sustain a claim for unlawful search of his home on October 6, 2020. As noted above, the state court records conclusively show that law enforcement engaged in the search of his home *after he was detained* pursuant to a lawful judicial warrant which allowed for the taking of the firearms and ammunition found in his home. *See State v. Burst*, No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court).[9] Accordingly, Plaintiff's claims for unlawful search are subject to dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court will next address Plaintiff's assertions that both his person was unlawfully seized, as well as his blood and urine.

In the Complaint Plaintiff states generally that two unnamed Sheriff's Department deputies[10] "forcibly restrained" him with "chains and shackles" on a restraint board and transferred

---

[9] The Court acknowledges that Plaintiff sues Social Worker Lori Meyers and Deputy Trevor Green relating to their entrance into the home *prior to his* detainment on October 6, 2020, as well. However, neither individual *searched* his home during their entrance into the home when they were brought to the home by his mother. Rather, they entered the home with the intention of allowing Plaintiff's mother to pack a bag so she could spend a night away from Plaintiff. And it is undisputed that Plaintiff shared the home with his mother, who gave consent for both Green and Meyers to enter the home with her. Therefore, Plaintiff cannot sue either Green or Meyers (or Meyers' employer, the Department of Health and Senior Services), for their entrance into the home when they had consent from Dorothy Burst to do so.

[10] Municipal entities, such as Ste. Genevieve County, may be liable for constitutional violations under § 1983 where an official policy or a widespread custom leads to the violation of a constitutional right. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690–91 (1978). A § 1983 action against an individual in her or his official capacity—here, Plaintiff's claim against the two deputies—is equivalent to a claim against the entity itself, requiring proof that an official custom or policy led to the constitutional deprivation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir.1995) (respondeat superior theory inapplicable in § 1983 suits). But Plaintiff must show more than "a single set of circumstances" that relate only to the Plaintiff to demonstrate the existence of a custom or policy. *Munz v.Parr*, 758 F.2d 1254, 1259 (8th Cir.1985). He has failed to do so in this instance. Plaintiff has also failed to provide facts indicating a deliberately indifferent failure to train or supervise. And as discussed below, the County could not provide its own standards for admittance to a mental health facility given that the State has stringent standards to follow which can be overruled by medical professionals if necessary. *See* Mo.Rev.Stat. § 632.310.2 (giving medical professionals independent decision making as to whether a person should be admitted involuntarily) ("Whenever a

him from his home to Ste. Genevieve County Memorial Hospital where they assisted Dr. Jane Barker and Dr. Shamin Amini, who were following policies of the Hospital, in removing Plaintiff's blood and urine.[11] Plaintiff also blames the unnamed phlebotomist on duty that evening who participated in drawing his blood. After reviewing the state court record, the Court concludes that Plaintiff's claims of unlawful seizure of both his person and his bodily fluids are subject to dismissal as the evidence in the record conclusively shows that instead of being subject to arrest on October 6, 2020, when Plaintiff was taken into custody by the Ste. Genevieve County Sheriff's Department, he was placed on a 96-hour hold mental health hold and taken to Ste. Genevieve County Memorial Hospital for observation.

Although a warrant for Plaintiff's arrest was issued on October 7, 2020, the warrant was not served on Plaintiff at the Ste. Genevieve County Jail until October 13, 2020. *See State v. Burst,* No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court). There is a notation on Plaintiff's Initial Appearance Order, entered on October 14, 2020, that "Defendant did not appear within 48 hours of his/her arrest because. . ."Defendant was on a 96 hour commitment." *See id*.

"[F]or the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." *Vitek v. Jones*, 445

---

peace officer applies for initial detention and evaluation pursuant to subsection 3 of section 632.305, the mental health facility may, but is not required to, accept the application and the respondent.").

[11] Plaintiff also makes sweeping legal conclusions stating that these two Sheriff's Department deputies "ordered" unknown persons at Ste. Genevieve County Memorial Hospital to collect blood and urine from him without his consent and without a warrant. However, these claims are unsupported and are conclusory. The Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir. 2002). To state a plausible cause of action, "[a] pleading that merely pleads . . . naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). In this case, Plaintiff provides no facts to support his assertions that the two Sheriff's Deputies acted in violation of the Fourth Amendment by ordering unnamed medical professionals to act outside their normal course of business, which allowed for medical review and necessary testing, when it came to admitting Plaintiff on a 96-hour hold. As such, these allegations are all subject to dismissal for failure to state a claim.

U.S. 480, 491–92 (1980) (alterations in original; internal quotations and citation omitted); *see also United States v. McAllister*, 225 F.3d 982, 989 (8th Cir.2000) ("It is undisputed that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'"). "A person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citing *Dent v. West Virginia,* 129 U.S. 114, 123 (1889)). Due process in Missouri is protected pursuant to the confines of the civil commitment statute.

Missouri Revised Statute § 632.305 allows peace officers to take individuals into custody for up to 96 hours (excluding weekends/holidays) if they appear to have a mental disorder and present a likelihood of serious harm to themselves or others. *See* Mo. Rev. Stat. § 632.305.3.[12] This statute is generally interpreted in conjunction with state regulations and medical facility policies, including 9 C.S.R. 80-1.005 that permit necessary diagnostic testing, including blood or urine samples, to assess a patient's immediate safety and mental state. *See, e.g., Coppola v. Health Alliance Hospital Broadway Campus, et al.,* No. 1:17-CV-1032 LEK/ATB (N.D. NY. Jan. 17, 2019), 2019 WL251765, *4 (noting that the doctor in the case provided testimony that the blood and urine tests were "routine tests" that must (under the applicable medical standard) be performed in conducting psychological evaluation and, therefore, would have been performed even if the state defendants had not suggested plaintiff was intoxicated at the time he was taken to be admitted for involuntary hold).

---

[12] The Missouri procedure provides, however, that when a facility receives an application from a peace officer, it "may, but is not required to, accept the application and the respondent." Mo. Rev. Stat. § 632.310.2. The facility may not rely solely on the police officer's affidavit in making that decision, moreover; it is still required to conduct an independent evaluation and admit or release the individual in accordance with the statutory standard of whether the individual "presents a likelihood of serious harm to himself or others." *Id.*; § 632.305.1.

Moreover, because a medical facility must determine if the detainee has a "mental disorder" or is suffering from a medical emergency, medical professionals perform "medical clearance" testing. This practice typically includes blood and urine tests to rule out physical causes for psychiatric symptoms. Additionally, § 632.305 allows medical professionals, during this 96-hour period the authority to treat and evaluate, which includes collecting samples to rule out underlying medical causes for any psychiatric symptoms.[13]

Last, the Court feels compelled to note that Ste. Genevieve County Memorial Hospital and its employees, Jane Barker, Shamin Amini, Unknown Phlebotomist and Unknown Supervisor Phlebotomist are unable to be held liable under 42 U.S.C. § 1983 for unlawful seizure or purported due process violations because they cannot be said to either be employees of the State of Missouri, compelled by the State to take a particular action, performing a traditional, exclusive public function or acting in concert with the State of Missouri such that they can be said to be "state actors." *See, e.g., Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009); *see also, Jones v. Diner*, No. 4:09CV00204 JMM, 2009 WL 1285842, at *2 (E.D. Ark. May 5, 2009) (collecting cases to show that private physicians who participate in involuntary commitments cannot be held liable under 42 U.S.C. § 1983).[14]

---

[13] Moreover, Missouri Revised Statute § 632.440 grants immunity from civil liability to health care professionals, public officials, and peace officers "performing functions necessary for the administration of this chapter" including "for investigating, detaining, transporting, conditionally releasing, or discharging a person ...."

[14] It is unclear if Plaintiff is simply alleging false imprisonment against the Hospital and its employees or if he is also bringing a medical malpractice under state law. As a practical matter, the Court notes that both claims require the filing of a health care affidavit under Missouri Revised Statute § 538.225.1. *See St. John's Reg. Health Ctr., Inc. v. Windler*, 847 S.W.2d 168, 171 (Mo. App. S.D. 1993) (because question of whether patient was properly held in psychiatric hospital turned on correctness of medical diagnosis, Section 538.225.1 applied). Regardless, the Court will not address a medical malpractice claim in this instance, as any state law claims that Plaintiff may have will be dismissed pursuant to 28 U.S.C. § 1367(c).

## IV.       Replevin Claims

Plaintiff seeks return of the guns and ammunition removed from his home by the Ste. Geneieve County Sheriff's Department on October 6, 2020. Although he filed the instant action on September 29, 2025, seeking return of his purported property, he also filed a state court action for replevin in Ste. Genevieve County Circuit Court on September 26, 2025. *See Burst v. Ste. Genevieve County Sheriff's Department*, et al., No. 25SG-CC00052 (24th Jud. Cir., Ste. Genevieve County Court).

In the state court action, Plaintiff seeks return of "firearms wrongfully retained" by Sheriff Gary Stolzer and Ste. Genevieve County. Defendants have moved to dismiss the action on several bases, the most salient being that Plaintiff has failed to properly allege facts showing that the criminal prosecution giving rise to the seizure of the items has concluded (including all post-trial appellate matters and challenges). Defendants' motion to dismiss has not yet been set for hearing, although the case is set for a status conference on March 9, 2026. After reviewing Plaintiff's allegations, the Court finds that pursuant to the principles espoused in the *Colorado River* abstention doctrine, this Court should abstain from reviewing the same replevin claims currently being reviewed in the state court.

The *Colorado River* abstention is a doctrine of judicial economy which derives from principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). Its purpose is "to avoid duplicative litigation." *Colorado River*, 424 U.S. at 817. *Colorado River* abstention, therefore, is akin to a first-to-file rule for actions that are first filed in state court and then filed in federal court. *Colorado River*, 424 U.S. at 817–818. However, although the doctrine exists, the Supreme Court has cautioned federal courts that they should abstain only in the face of concurrent state proceedings in exceptional cases

- 15 -

due to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Therefore, federal courts should abstain only in exceptional circumstances after considering several factors and not just whether the state court action was filed first. *Colorado River*, 424 U.S. at 817.

*Colorado River* abstention is premised on notions of "'conservation of judicial resources and comprehensive disposition of litigation.'" *Id*. (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952)). Case law has clarified that the *Colorado River* doctrine allows abstention when two requirements are met: 1) parallel state and federal actions, and 2) exceptional circumstances. *Fru–Con Constr. Corp. v. Controlled Air, Inc.,* 574 F.3d 527, 534 (8th Cir.2009) (plurality opinion) (citing *Colorado River*, 424 U.S. at 817–18); *see also Baskin v. Bath Twp. Bd. of Zoning Appeals,* 15 F.3d 569, 571 (6th Cir.1994) (indicating that the presence of parallel proceedings is a prerequisite for the application of *Colorado River* abstention).

As outlined above, Plaintiff filed the state court replevin action three days prior to the instant action, and Defendants' motion to dismiss the replevin claims have been fully briefed in that case. The replevin claims in the state court action are the same as those in this action and a ruling in the state proceeding will fully dispose of the replevin claims cited herein. *See Fru–Con Constr. Corp.,* 574 F.3d at 535. Allowing Plaintiff to litigate in both this forum as well as the state court action would result in piecemeal litigation with the result being the possibility of inconsistent verdicts. When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications. *See Romine v. Compuserve Corp.,* 160 F.3d 337, 340–341 (6th Cir.1998) (quoting *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 694 (7th Cir.1985). Here, there

is no doubt that a failure to abstain will result in piecemeal litigation with the result potentially being inconsistent verdicts regarding whether, or when, Plaintiff has a right to retrieve his alleged property. With respect to forum, the Court does not believe that either state or federal court is more or less convenient to the parties. Although this Court can protect Plaintiff's rights, the state court action has progressed further than the present action, as noted above. Considering all of these factors together and the weight in favor of maintaining jurisdiction, *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15–16 (1983), the Court finds that *Colorado River* abstention applies in this case. This Court should defer to the state court action on Plaintiff's replevin claims and dismiss these claims without prejudice in the present action.

## V.      Excessive Force Claim

The Court last addresses Plaintiff's claim of excessive force at the time he was detained on October 6, 2020. In the Complaint, Plaintiff asserts that Sheriff Gary Stolzer "personally tackled" him wihle he was on his front porch surrendering. He asserts in a conclusory fashion that this "greatly exceed[ed]" the degree of force necessary to complete his arrest, but he fails to give particular facts relative to exactly *how* he was taken into custody. Although Plaintiff states he suffered "broken teeth," and "dislocated bones" as a result of the "tackle," he fails to articulate exactly what occurred during his detainment by Sheriff Stolzer after the five-hour standoff with police.

A § 1983 claim may be based on a police officer's use of excessive force in effecting an arrest because the Fourth Amendment protects, among other things, an individual's right to be free from unreasonable seizures by the police. Under the Fourth Amendment, the test for determining whether excessive force was used is whether "the amount of force used was objectively reasonable under the particular circumstances." *Small v. McCrystal,* 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir. 2009) ). *See also Hicks v.*

*Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process."). The Court determines "whether a use of force was reasonable by balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "[r]easonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene." *McCoy v. City of Monticello*, 342 F.3d 842, 848 (8th Cir. 2003) (citing *Graham*, 490 U.S. at 396–97). Thus, the reasonableness of force depends on the circumstances confronting the officers, including factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010) (citing *Graham*, 490 U.S. at 396).

This inquiry is objective, questioning "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also McCoy*, 342 F.3d at 848 (reasonableness "must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation."). The Court "must assess the actions of each officer 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 396). "This calculus allows for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Brown*, 574 F.3d at 496 (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)) (internal quotation omitted).

Given that Plaintiff engaged in a five-hour standoff with police, while holding a loaded weapon, with which he was actively threatening at least two deputies (and in one case, the deputy's family) with imminent physical injury, the Court finds that the "tackle" by Defendant Stolzer, passes an objective standard of reasonableness given the totality of circumstances in this case. Plaintiff was ultimately charged with unlawful use of a weapon, exhibiting a gun in an angry or threatening manner and assault in the fourth degree. *See State v. Burst*, No. 20SG-CR00645-01 (24th Jud. Cir., Ste. Gen. County Court). A jury found him guilty of those charges, and on February 6, 2024, Plaintiff received a 4-year sentence for the weapon count and a 6-month sentence for the assault count, which were ordered to run concurrently. Plaintiff also had prior charges for unlawful use of a weapon and felonious restraint, which the deputies knew about at the time of the altercation, and the deputies also knew about Plaintiff's prior history of assaulting his mother.

The Court finds that it was not unreasonable for Defendant Stolzer to restrain Plaintiff by "tackling" him after a five-hour standoff. Plaintiff had been armed during the majority of that time, and police officers are authorized to detain individuals who pose a danger to themselves and the public. *See Lacy v. City of Bolivar*, 416 F.3d 723, 727 (8th Cir. 2005) (discussing standard under Mo. Rev. Stat. § 632.305 authorizing detention). Moreover, given Plaintiff's threats of harm to the two officers and Plaintiff's lengthy stand-off, Sheriff Stolzer had the authority to restrain him. *See Winters v. Adams*, 254 F.3d 758, 763-64 (8th Cir. 2001) (police are authorized to stop and detain persons who appear dangerous to themselves or others as part of their "community caretaking"

function). Even assuming that Plaintiff was attempting to give himself up without a fight, as he posits in the Complaint, the facts are that he had been in a prolonged stand-off with the police, and he had been threatening officers with harm.

The Eighth Circuit has counseled that reasonableness must be looked at as the issue appeared to the officers in that moment, and not in hindsight. *See, e.g., Boude v. City of Raymore*, 855 F.3d 930, 933–34 (8th Cir. 2017) (qualified immunity does not depend on whether the individual's actions were "in fact" innocent but, rather, "the key" is whether the officers reacted reasonably to the circumstances as they appeared to the officers). And this Court finds a recent Sixth Circuit case to be instructive.

In *Booth v. Lazzara*, the Court examined the issue of whether it was reasonable under the Fourth Amendment for a police officer to release a police dog and attempt to tackle the individual himself, when the accused was suffering from a mental illness, had engaged in an hours-long stand-off with police and had access to guns. 164 F.4th 581 (6th Cir. 2026). The Circuit Court found that reviewing the facts and circumstances of the case, including the fact that the mentally ill individual had engaged in an hour-long stand-off with police, had access to guns and that the individual had failed to comply with police orders – it was reasonable to first try to incapacitate the individual with police commands, and when that did not work, with the police dog and the attempts by the police officer. Id. at 592-94. The Circuit Court stated, "Under the Constitution, officers need not use "the best technique available"; they need only use a reasonable one." *Id*. at 594 quoting *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020).

The Court finds, as set forth above, that based on the facts and circumstances of this case, it appears there was no Fourth Amendment violation in this instance by Defendant Stolzer.[15]

---

[15] Plaintiff additionally attempts to assert *Monell* liability on behalf of Ste. Genevieve County for the excessive force allegations, but because he has failed to allege a constitutional violation, he cannot assert an unlawful custom, policy or failure to train claim.

**Conclusion**

Having thoroughly reviewed and liberally construed the Complaint, the Court concludes that it is subject to dismissal because it fails to state a claim upon which relief may be granted. The Court can envision no amendment to the Complaint that would cause it to state a plausible claim for relief. The Court will therefore dismiss this action at this time, without prejudice, and will decline to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (where all federal claims have been dismissed, district court's decision to decline supplemental jurisdiction over state claims is "purely discretionary").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's claims that he was (1) subjected to false arrest, (2) false imprisonment, (3) violations of his due process and equal protection rights (with regard to his arrest), (4) an encroachment on his right to bear arms and cruel and unusual punishment, are **DISMISSED,** pursuant to the doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

**IT IS FURTHER ORDERED** that Plaintiff's claims that his home was unlawfully searched, that his blood and urine were unlawfully seized and that he was subjected to excessive force during the course of his arrest on October 6, 2020, are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

- 21 -

**IT IS FURTHER ORDERED** that the Court will abstain from reviewing Plaintiff's state law replevin claims under the *Colorado River* absention doctrine, and therefore **DISMISS** such claims without prejudice, given Plaintiff's duplicative Missouri state case.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED at this time**.

**IT IS FURTHER ORDERED** that all state law claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c).

**IT IS HEREBY CERTIFIED** that an appeal from this Order of Dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this <u>20th</u> day of February, 2026.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE